**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

Michael T. Gillard,

    Petitioner,

    v.

Shelbie Smith, Warden,

    Respondent.

Case No. 2:24-cv-3695

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

The Muskingum County Common Pleas Court sentenced Michael Gillard ("Petitioner") to ten-to-fifteen years' imprisonment after he was found guilty of two counts of rape and one count of attempted rape. Petition 2, ECF No. 1. Petitioner now petitions for a Writ of Habeas Corpus. *Id.*

The Magistrate Judge issued a Report and Recommendation ("R&R"), recommending the Court deny the Petition on the merits. R&R, ECF No. 18. Petitioner objects. ECF No. 24. For the following reasons, the Court **OVERRULES** Petitioner's objections and **ADOPTS IN PART** the R&R.

## I.     PROCEDURAL HISTORY

### A.     Direct Appeal

Petitioner raised two issues on direct appeal: (1) Petitioner's convictions were against the manifest weight of the evidence; and (2) the trial court erred in admitting prior bad act evidence. ECF No. 4 at PAGEID ## 199–219.

The Ohio Fifth District Court of Appeals ("Fifth District") affirmed Petitioner's convictions, *id.* at PAGEID ## 247–65, and the Supreme Court of Ohio ultimately declined certiorari, *id.* at PAGEID # 335.

Petitioner does not raise either of these issues in his Petition.

## B. Application to Reopen Direct Appeal

Petitioner also applied, pursuant to Ohio Rule of Appellate Procedure 26(B), to reopen his direct appeal with the Fifth District. *Id.* at PAGEID ## 336–48. He argued that appellate counsel was ineffective in failing to argue on direct appeal that: (1) trial counsel's failure to test certain evidence that had been collected but not tested ("the untested DNA samples")[1] deprived Petitioner of his Sixth Amendment rights to present a complete defense and to a fair trial and of his Fourteenth Amendment right to due process; (2) trial counsel's failure to test the untested DNA samples deprived Petitioner of his Sixth Amendment right to the effective assistance of trial counsel; and (3) the prosecutor committed a *Brady* violation by failing to test the untested DNA samples. *Id.*

The Fifth District Court of Appeals denied the application to reopen the direct appeal, concluding that there was no genuine issue as to whether appellate counsel was ineffective for failing to raise those three claims. *Id.* at

---

[1] The untested DNA samples included "pubic hair, neck, thigh, and fingernail swabs from M.G, and an oral swab from A.G." ECF No. 4 at PAGEID # 255. M.G. is the victim in this case, and A.G. is her older sister.

PAGEID ## 387–96. The Supreme Court of Ohio again refused certiorari. *Id.* at

PAGEID # 422.

## C. Petition for a Writ of Habeas Corpus

Because Petitioner objects to the Magistrate Judge's construction of the

claims raised in his Petition, the Court begins by setting out the same.

The Petition contains two "propositions of law." Petition 7–8, ECF No. 1.

The first "proposition of law" states:

> The Petitioner was denied his right to a complete defense, due
> process, fair trial and effective assistance of counsel when the trial
> counsel failed to investigate and to conduct additional testing of the
> untested DNA samples which are exculpatory and impeaching, which
> violated his right under U.S. Constitution Amendment V, VI, and XIV,
> and Ohio Const. Art I, 1, 10 and 16;

> Supporting Facts: Petitioner['[s Counsel was ineffective
> because he failed to raise trial counsel's failure to request DNA testing
> of all samples collected during the investigation of the case. Giving
> [sic] that the Y-STR is very broad, and the petitioner['[s claims of
> innocence trial counsel should have tested the untested sample to
> discover who the male DNA belonged to where it was not linked to the
> petitioner.

*Id.* at 7–8.

The Magistrate Judge construed this proposition of law as asserting a

claim for ineffective assistance of trial counsel and a claim for ineffective

assistance of appellate counsel. R&R 8–9, ECF No. 18; *see also* ECF No. 10 at

PAGEID # 2218 ("Ground One of the initial Petition already contains Petitioner's

new claim that appellate counsel performed ineffectively by failing to raise on

direct appeal trial counsel's alleged ineffectiveness in the handling of DNA

evidence." (citation omitted)).  The Magistrate Judge apparently did not construe this proposition of law as asserting stand-alone claims that trial counsel's failure to test the untested DNA samples deprived Petitioner of his Sixth Amendment rights to present a complete defense and to a fair trial or his Fourteenth Amendment right to due process because she did not consider such claims in the R&R.

The Petition's second proposition of law states:

> The Prosecutor committed a Brady violation when it purposely avoided testing the untested DNA samples which is material exculpatory and impeaching evidence.

> Supporting Facts:  Prosecutor suppressed favorable [e]vidence in violation of Brady v. Maryland.  Giving [sic] that the Y-STR is very broad, and the petitioner[']s claims of innocence the prosecutor should have tested the untested sample to discover who the male DNA belonged to where it was not linked to the petitioner.

Petition 8, ECF No. 1.

The Magistrate Judge construed this proposition of law as asserting a Fourteenth Amendment substantive due process claim based on the prosecutor's alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  R&R, ECF No. 18 at PAGEID # 2343.  Additionally, the Magistrate Judge had permitted Petitioner to amend his Petition to add a claim that appellate counsel was ineffective for failing to raise that *Brady* claim on appeal.  ECF No. 10 at PAGEID # 2219.

Thus, by the time the Magistrate Judge issued the R&R, she construed the Petition as raising four claims: (1) trial counsel was ineffective under the Sixth Amendment for failing to test the untested DNA samples; (2) appellate counsel

was ineffective under the Sixth Amendment for failing to raise on direct appeal trial counsel's ineffectiveness for failing to test the untested DNA samples; (3) the prosecutor committed a Fourteenth Amendment *Brady* violation; and (4) appellate counsel was ineffective under the Sixth Amendment for failing to raise on direct appeal the prosecutor's *Brady* violation.  R&R, ECF No. 18 at PAGEID # 2343.

## D.     Report and Recommendation

As a preliminary matter, the Magistrate Judge recommends denying Petitioner's request for an evidentiary hearing and recommends, instead, limiting consideration to the evidence considered by the state appellate court.  R&R 19, ECF No. 18.

On that state-court record, the Magistrate Judge notes that Respondent has raised the defense of procedural default.  R&R, ECF No. 18 at PAGEID # 2343.  Specifically, Respondent argues that Petitioner's Sixth Amendment ineffective assistance of trial counsel claim and Petitioner's Fourteenth Amendment *Brady* claim are procedurally defaulted because Petitioner did not present them to the state courts.  *Id.* (citing ECF No. 11 at PAGEID # 2236–50).

The Magistrate Judge also notes that, in analyzing whether Petitioner may overcome the procedural default of those two claims, the Court would have to essentially analyze the merits of those claims.  R&R, ECF No. 18 at PAGEID # 2343.  So, the Magistrate Judge recommends overlooking the procedural

default and considering the merits of Petitioner's ineffective assistance of trial counsel claim and stand-alone *Brady* claim.  *Id.*

Ultimately, the Magistrate Judge recommends denying on the merits Petitioner's ineffective assistance of trial counsel claim based on trial counsel's failure to test the untested DNA samples and Petitioner's ineffective assistance of appellate counsel claim based on appellate counsel's failure to raise trial counsel's ineffectiveness on appeal.  *Id.* at 12–16.  Specifically, the R&R concludes that the state court determined that appellate counsel was not ineffective for failing to raise trial counsel's ineffectiveness on appeal because trial counsel was not ineffective for failing to test the untested DNA samples, and the R&R further concludes that said state-court determination was neither contrary to nor an unreasonable application of clearly established United States Supreme Court law.  *Id.*  That state-court determination dooms both the claims for ineffective assistance of trial and appellate counsel, to the extent they are based on trial counsel's failure to test the untested DNA samples.  *Id.*

Similarly, the Magistrate Judge recommends denying on the merits the stand-alone *Brady* claim and the remaining ineffective assistance of appellate counsel claim, which is based on appellate counsel's failure to raise on direct appeal the stand-alone *Brady* claim.  Specifically, the R&R concludes that the state court determined that appellate counsel was not ineffective for failing to raise the prosecutor's *Brady* violation on appeal because the prosecutor did not commit a *Brady* violation; it further concludes that said state-court determination

was neither contrary to, nor an unreasonable application of, clearly established United States Supreme Court law.  *Id.* at 16–19.  That state-court determination dooms both the ineffective assistance of appellate counsel claim (to the extent it is based on appellate counsel's failure to assert the *Brady* claim) and the procedurally defaulted, stand-alone *Brady* claim.  *Id.*

In sum, the Magistrate Judge construes the Petition as raising one ineffective assistance of trial counsel claim, two ineffective assistance of appellate counsel claims, and one stand-alone *Brady* claim.  It recommends looking past any procedural default of the ineffective assistance of trial counsel or stand-alone *Brady* claims and considering all four claims on their merits, but, based on such consideration, it recommends denying all four claims on their merits.

## II.   ANALYSIS

### A.   Scope of Objections

Petitioner filed forty-two pages of objections, ECF No. 21, which the Court struck because they contravened the Undersigned's Standing Orders, ECF No. 22.

Petitioner then moved for relief from the Court's Order and for leave to file thirty pages of objections, which motion was erroneously docketed as an "objection."  ECF No. 23.  Petitioner thereafter filed compliant objections, which were docketed as "Amended Objection."  ECF No. 24.

Petitioner's request to vacate the Court's prior Order striking his noncompliant objections is **DENIED**. His assertion that he never received the Undersigned's Standing Orders misses the mark. It is Petitioner's responsibility to familiarize himself with all governing rules in this action, whether those be the Rules Governing § 2254 Cases, the Federal Rules of Civil Procedure, the local rules for the Southern District of Ohio, the Court's Standing Orders, or otherwise. The Court has no obligation to proactively send a copy of the Undersigned's Standing Orders to Petitioner. There was no violation of Federal Rule of Civil Procedure 77(d), and there is no basis to grant relief from the Court's Order striking Petitioner's non-compliant objections.

Given this conclusion, Petitioner's next assertion—that he was not provided an opportunity to move for an extension of the page limits—also falls flat. Petitioner could have moved, prior to the objections deadline, to exceed the page limit. That he did not do so because he was unaware of the limit does not mean that he was deprived of the opportunity.

Finally, Petitioner's request for an extension of the page limitation is **DENIED**. Despite his assertion to the contrary, the issues involved in this Petition are neither unduly complicated nor numerous (to the contrary, there is quite a bit of overlap in the issues), so an extension of the page limitation is not warranted. The Court will consider Petitioner's objections as briefed in ECF No. 24, which appear on the docket as "Amended Objection" but which are the only compliant set of objections in the case.

**B.     Merits of Objections**

Petitioner raises five objections to the R&R.  The Court addresses them in order, after setting forth the applicable standard of review.

**1.     Standard of Review**

Pursuant to Federal Rule of Civil Procedure 72(b), the Court reviews *de novo* those portions of the R&R to which Petitioner properly objected.  Fed. R. Civ. P. 72(b)(3).  The Court can accept, reject, or modify the recommendation, receive further evidence, or return the matter to the Magistrate Judge.  *Id.*

**2.     Objection #1**

Petitioner's first objection is essentially a contention that the Magistrate Judge misconstrued the scope of his Petition.  He asserts that the Magistrate Judge failed to consider the claims that Petitioner "was denied the right to present a complete defense relating to the untested DNA samples, thereby resulting in the violation of due process of the Fourteenth Amendment, the confrontation clause of the Sixth Amendment, and creates a miscarriage of justice[.]"  Obj. 1, ECF No. 24.  In other words, Petitioner asserts that the Magistrate Judge failed to consider that trial counsel's failure to test the untested DNA samples deprived Petitioner of not just his right to the effective assistance of trial counsel but also his Sixth Amendment rights to present a complete defense, to confront witnesses against him, and to a fair trial,[2] as well as his Fourteenth

---

[2] Petitioner does not refer to his right to a fair trial in his objection, but he does mention it in his Petition, *compare* ECF No. 1 at PAGEID # 7 *with* ECF No. 24 at PAGEID

Amendment due process right. The Court will refer to these as the "stand-alone Ground One claims," to be distinguished from Petitioner's claim that trial counsel's failure to test the untested DNA samples deprived Petitioner of his Sixth Amendment right to the effective assistance of trial counsel, which the Magistrate Judge did consider.

The Magistrate Judge never considered the stand-alone Ground One claims because, as mentioned above, she never construed the Petition as raising the stand-alone Ground One claims. Rather, she construed Ground One as asserting two ineffective assistance of counsel claims: one against trial counsel and one against appellate counsel. ECF No. 10 at PAGEID # 2217. To the extent Petitioner believed that the Magistrate Judge misconstrued his claims, he should have raised the issue earlier.

In any event, the stand-alone Ground One claims are procedurally defaulted and, therefore, properly not considered on their merits. Petitioner never argued on direct appeal a stand-alone claim that trial counsel's failure to test the untested DNA samples denied Petitioner his Sixth Amendment rights to present a complete defense, to confront witnesses against him, or to a fair trial. Nor did Petitioner raise on direct appeal a stand-alone claim that trial counsel's failure to test the untested DNA samples denied Petitioner his Fourteenth Amendment right to due process. *See* ECF No. 4 at PAGEID ## 199–219

---

# 2405, so the Court considers this as one of the claims that Petitioner attempts to assert.

(arguing only manifest weight of the evidence and improper propensity evidence).

To the extent Petitioner believes that he raised these stand-alone Ground One claims in his Rule 26(B) application to reopen his appeal, he is mistaken. His application to reopen the appeal did not raise the stand-alone Ground One claims; it raised only a claim that *appellate counsel was ineffective* for failing to assert on direct appeal most of those stand-alone Ground One claims.[3] *See* ECF No. 4 at PAGEID ## 336–48; Ohio R. App. P. 26(B)(1) (permitting a criminal defendant to "apply for reopening of the appeal . . . based on a claim of ineffective assistance of appellate counsel."); *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) ("By its very nature, then, a Rule 26(B) application is a claim of ineffective assistance of appellate counsel."); *Dawson-Durgan v. Shoop*, No. 1:19-cv-382, 2022 WL 1084866, at *9 (S.D. Ohio Apr. 11, 2022) ("An Ohio App. Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments, not the underlying substantive arguments." (citation omitted)), *R&R adopted by* 2023 WL 2728477 (S.D. Ohio Mar. 31, 2023).

---

[3] The state court seems not to have construed Petitioner's application to reopen as a failure of appellate counsel to raise the stand-alone Ground One claims but rather as a failure of appellate counsel to argue an ineffective assistance of trial counsel claim. *See* ECF No. 4 at PAGEID # 391 (construing Petitioner's "First Proposed Assignment of Error" as appellate counsel's failure to raise an ineffective assistance of trial counsel claim). Moreover, the Confrontation Clause claim (to the extent it is separate from the right to present a complete defense) appears nowhere in the application to reopen the appeal or the Petition. *See* ECF No. 1; ECF No. 4 at PAGEID ## 336–45. It is mentioned for the first time in Petitioner's objection. ECF No. 24 at PAGEID # 2405.

Because the Fifth District did not grant Petitioner's application, his appeal was never reopened, and he never raised the stand-alone Ground One claims. *Davie*, 547 F.3d at 312 ("[B]ringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review because the two claims are analytically distinct. Thus, a Rule 26(B) application based on ineffective assistance cannot function to preserve the underlying substantive claim." (internal quotation marks and citation omitted)). The mere fact that the Fifth District considered trial counsel's ineffectiveness when assessing Petitioner's ineffective assistance of appellate counsel claim does not mean that Petitioner sufficiently presented the stand-alone Ground One claims to the state courts. *Id.* at 313 ("The mere fact that Davie's substantive 'acquittal-first' claim was included as an underlying assignment of error in the Rule 26(B) application does not, given the comity and federalism concerns implicated in habeas cases, justify reaching the merits of that claim.").

To the extent the Court should construe the Petition as raising the stand-alone Ground One claims separate from any ineffective assistance of trial counsel claim, then, they are procedurally defaulted unless Petitioner overcomes the procedural default.

As the Magistrate Judge noted, one manner of overcoming procedural default is through an ineffective assistance of appellate counsel claim. R&R, ECF No. 18 at PAGEID # 2343; *see also Davie*, 547 F.3d at 312. In connection

with the Rule 26(B) application, the Fifth District did consider the merits of

Petitioner's claims that appellate counsel was ineffective for failing to raise on

direct appeal both trial counsel's ineffectiveness and the prosecutor's *Brady*

violation, so *those* ineffective assistance of appellate counsel claims are not

procedurally defaulted.  In this way, the Court's ability to consider the stand-alone

Ground One claims (which Petitioner accuses the Magistrate Judge of failing to

consider) hinges on whether Petitioner demonstrates that appellate counsel was

ineffective for failing to raise those claims on direct appeal.  The viability of those

claims on direct appeal collapses with Petitioner's ineffectiveness of trial counsel

claim.  So, in short, Objection #1 rises or falls with Objection #2 (Petitioner's

contentions about the Fifth District's decision): if appellate counsel was

ineffective for failing to raise trial counsel's ineffectiveness, Petitioner overcomes

the procedural default, and the Court can consider the stand-alone Ground One

claims along with the procedurally defaulted ineffective assistance of trial counsel

claim.  On the other hand, if appellate counsel was not ineffective, the stand-

alone Ground One claims and the ineffective assistance of trial counsel claim are

procedurally defaulted, and the Magistrate Judge made no error in failing to

consider the merits of the stand-alone Ground One claims.

     As shown below, because the R&R correctly recommends that the Court

deny Petitioner's ineffective assistance of appellate counsel claims, Petitioner is

procedurally defaulted from raising the stand-alone Ground One claims.  The

R&R thus did not err in failing to consider the merits of the stand-alone Ground One claims, and Petitioner's Objection #1 lacks merit.

### 3.    Objection #2

Second, Petitioner argues that the Fifth District's determination regarding appellate counsel's ineffectiveness for failing to raise on direct appeal both trial counsel's ineffectiveness for failing to test the untested DNA samples and the prosecutor's *Brady* violation were unreasonable applications of, or contrary to, clearly established Supreme Court law, and the R&R erred in recommending that the Court conclude otherwise.  Obj. 5, ECF No. 24.

Because the Fifth District *did* adjudicate these claims on the merits, this Court must apply AEDPA deference to those determinations.  *Davie*, 547 F.3d at 313.  Thus, this Court considers whether the Fifth District's decisions were contrary to, or an unreasonable application of, clearly established United STAtes Supreme Court precedent.  They were not.

To reiterate, the Fifth District's determinations were limited to appellate counsel's ineffectiveness; the Fifth District did not consider the merits of a claim for trial counsel's ineffectiveness or for the prosecutor's *Brady* violation.  *E.g.*, ECF No. 4 at PAGEID # 387 ("App. R. 26(B) establishes a two-stage procedure to adjudicate claims of ineffective assistance of appellate counsel.").  But appellate counsel's ineffectiveness ultimately hinges on whether trial counsel was ineffective for failing to test the untested DNA samples and whether the prosecutor committed a *Brady* violation.  So, this Court explores the Fifth

District's "ineffectiveness of appellate counsel" determination by looking to what the Fifth District said about the unraised ineffective assistance of trial counsel and *Brady* claims, keeping in mind that the ineffective assistance of trial counsel claim, in turn, subsumes any stand-alone Ground One claims based on the failure to test the untested DNA samples.

### a.    Failure to Raise Trial Counsel's Ineffectiveness

The Fifth District's determination—that trial counsel's decision not to test the untested DNA samples was a sound trial strategy—was neither contrary to, nor an unreasonable application of, United States Supreme Court law.

Trial counsel's choice not to test the untested DNA samples could have stemmed from a reasonable and substantial fear that Petitioner's DNA would be found on the untested samples (or at least be consistent with the DNA found on the untested samples). Trying to create reasonable doubt by blaming the State for not testing all available samples was thus a strategic decision that leveraged the State's failure to test the samples without risking negative results from undertaking that testing. *See* ECF No. 4-2 at PAGEID ## 820, 1895, 2082. It was thus not deficient performance.

Moreover, as the Fifth District noted, Petitioner has not established that any of the untested DNA samples would be exculpatory such that he suffered prejudice from trial counsel's strategy. Petitioner surely *says* as much, but he has not *shown* as much because his self-serving statements are pure speculation; the evidence remains untested, so the results are unknown.

Even more, Petitioner's speculation is, itself, legless.  Because Petitioner's penile swab contained a mixture of DNA, a finding of A.G.'s DNA within the mixture (assuming Petitioner's assertion that testing would reveal the same) simply has no relevance to whether M.G.'s DNA makes up the remainder of the mixture.  The presence of A.G.'s DNA on Petitioner's penile swab likewise does not change the fact that Petitioner could not be excluded from the Y-STR testing from M.G.'s breast and vaginal samples.  Nor could testing of the untested DNA samples exclude M.G. as a contributing source of the DNA found on Petitioner's penile swab.  Thus, the Fifth District correctly concluded that, though the presence of A.G.'s DNA on Petitioner's penile swab could impeach A.G.'s credibility,[4] "it would not exonerate [Petitioner] in the rape of M.G."  ECF No. 4 at PAGEID # 393.

Moreover, a lack of Petitioner's DNA on the untested DNA samples would not change the other evidence of guilt: M.G.'s testimony that Petitioner raped her, the bruise on M.G.'s back, or the testimony of M.G.'s friend and M.G.'s mother.

Thus, Petitioner has failed to demonstrate a reasonable probability that testing of the untested DNA samples would have led to a different result in the trial.  *See Davison v. United States*, No. 21-4170, 2022 WL 17572211, at *4 (6th

---

[4] Trial counsel did impeach A.G.'s credibility through Detective Shawger's testimony that A.G.'s DNA was found on underwear located on the couch in Defendant's mother's home, which was consistent with Defendant's version of events.  Tr. 852:18–855:4, ECF No. 4-2 at PAGEID ## 1308–10.

Cir. June 7, 2022) ("Davison presented no evidence that the results of DNA and fingerprint testing would have been in his favor.").

Because Petitioner can show neither deficient performance by trial counsel nor prejudice, he failed to show that appellate counsel was ineffective for failing to raise on direct appeal trial counsel's ineffectiveness.

Petitioner's argument to the contrary is unavailing.  He contends that the Fifth District's determination on this issue was contrary to *California v. Trombetta*, 467 U.S. 479 (1984), *Smith v. Murray*, 477 U.S. 527 (1986), and *Smith v. Robbins*, 528 U.S. 259 (2000).[5]  Obj. 3, 5, ECF No. 24.  But none of those cases help Petitioner, let alone establish that the Fifth District's determination was contrary to, or an unreasonable application of, clearly established Supreme Court law.

*Trombetta* held that the government had no due process obligation to preserve breath samples interpreted by a device called an Intoxilyzer.  *See generally Trombetta*, 467 U.S. 479 (1984).  This case, by contrast, does not involve the State's destruction of evidence, so it is not clear how the Fifth

---

[5] Petitioner also seems to argue that the Fifth District's decision was contrary to *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999), because it did not address each of the factors discussed in *Mapes*.  Obj. 6, ECF No. 24.  Even if that were so, relief is warranted only when a state-court decision is contrary to, or an unreasonable application of, a principle "embodied in a Supreme Court holding.  Circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court."  *Tucker v. Nagy*, No. 24-1723, 2025 WL 1693798, at *2 (6th Cir. June 17, 2025) (citation modified).

District's determination could be contrary to, or an unreasonable application of, *Trombetta*.

*Smith v. Murray* reiterated the "cause and prejudice" standard for overcoming procedural default on direct appeal. 477 U.S. 527, 533 (1986). As part of the "cause" analysis, the Supreme Court concluded that appellate counsel's deliberate decision not to raise a particular claim on direct appeal did not render appellate counsel ineffective. *Id.* at 535. Again, it is not clear how the Fifth District's determination in this case could be contrary to, or an unreasonable application of, *Murray*.

*Smith v. Robbins* determined the constitutionality of California's procedure for appellate counsel who believe that an appeal is frivolous and should not be permitted (or should be dismissed). 528 U.S. at 264–65. The Supreme Court concluded that California's procedure did not violate the Fourteenth Amendment because it provided "the minimum safeguards necessary to make [the first appeal as of right] adequate and effective." *Id.* at 276 (citation modified).

Appellate counsel here did not file what Ohio courts colloquially refer to as an "*Anders* brief," so the relevance of *Robbins* to this case is limited to the fact that, in *Robbins*, the Supreme Court reiterated (in dicta) that the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), applies to a claim of ineffective assistance of appellate counsel when appellate counsel fails to file a merits brief. *Id.* at 285 (citation omitted). But even in confirming that *Strickland* applies in such instances, the *Robbins* Court distinguished between what

constitutes deficient performance when counsel fails to file a merits brief versus what constitutes deficient performance when counsel files a merits brief but omits a particular claim. *Id.* at 288 (noting that it will be easier for a defendant to show deficient performance when counsel fails to file a merits brief than when counsel merely omits one claim from a merits brief). Again, appellate counsel here filed a merits brief on direct appeal, and nothing in the Fifth District's analysis of the omitted claims is contrary to *Strickland* (or *Robbins's* discussion of *Strickland*).

In sum, the Fifth District's determination concerning the ineffectiveness of appellate counsel (based on appellate counsel's failure to argue the ineffectiveness of trial counsel) was not contrary to or an unreasonable application of *Trombetta*, *Murray*, or *Robbins*. Thus, these theories of Petitioner's ineffective assistance of appellate counsel claim fail on the merits. Moreover, without ineffective assistance of appellate counsel, Petitioner cannot overcome the procedural default of his underlying ineffective assistance of trial counsel or his stand-alone Ground One claims, so those claims are **DISMISSED** as procedurally defaulted.

### b.    Failure to Raise the Prosecutor's *Brady* Violation

Petitioner seems again to assert that the Fifth District's determination regarding appellate counsel's failure to raise the *Brady* claim was contrary to *Murray* and *Robbins*. Obj. 9, ECF No. 24. For the same reasons addressed above, the Fifth District's decision is simply not contrary to *Robbins* or *Murray*, nor is it an unreasonable application of *Robbins* or *Murray*.

Petitioner also argues that the Fifth District's *Brady* determination was contrary to *Banks v. Dretke*, 540 U.S. 668 (2004).  Obj. 11–12, 14–15, ECF No. 24.

*Banks*, a pre-AEDPA case, centered on whether the defendant could overcome the procedural default of his federal *Brady* claim.  *Banks*, 540 U.S. at 690–91.  Petitioner cites *Banks* for the proposition that criminal defendants need not "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed."  Obj. 11, ECF No. 24 (citing *Banks*, 540 U.S. at 695).

But that statement exists in the context of whether Banks established cause to overcome his procedural default, with the State arguing that he was not sufficiently diligent to establish cause.  Unlike in *Banks*, Petitioner's diligence is not at issue here.  Rather, the main issue here is whether the untested DNA samples are "exculpatory" for purposes of a *Brady* claim.  *Banks* does not bear upon that issue, so the Fifth District's opinion was neither contrary to, nor an unreasonable application of, *Banks*.

In fact, the Fifth District's determination on appellate counsel's ineffectiveness for failure to raise the *Brady* claim was legally correct.  To recap, this is not a case where the prosecutor performed DNA tests and suppressed exculpatory results.  Rather, Petitioner's issue is that the prosecutor *failed* to test certain DNA evidence.  But to further recap, the prosecutor likewise did not suppress the lack of testing.  To the contrary, Detective Shawger testified that the

untested DNA samples existed and were never tested, and trial counsel addressed the lack of testing in his closing argument. Tr. 790:7–12, 834:19–855:4, 1620:9–1624:8, ECF No. 4-2 at PAGEID ## 1246, 1290–1311, 2076–80. So, Petitioner's argument is that the prosecutor had a *Brady* obligation to test all available DNA evidence and to then disclose the results to defense counsel.

As a preliminary matter, untested DNA samples are not "exculpatory" for *Brady* purposes; once tested, the results could be exculpatory, inculpatory, or inconclusive. *See Skinner v. Switzer*, 562 U.S. 521, 525, 534 (2011) ("While test results might prove exculpatory, that outcome is hardly inevitable; as earlier observed, . . . , results might prove inconclusive or they might further incriminate Skinner." (citation omitted)). Petitioner's *Brady* claim fails on that basis alone: no exculpatory evidence was suppressed.

What Petitioner truly invokes is the Supreme Court's "access to evidence" cases because he argues the prosecutor had a duty to test the untested DNA samples. But no such duty exists under *Brady* or the Supreme Court's "access to evidence" cases. *Cf. Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (finding no due process violation where the state collected a rectal swab and clothing, failed to refrigerate the clothing or test semen samples from the same, and made the untested evidence available to the defendant's expert, who declined to test it); *Vercruysse v. Morrison*, No. 20-1928, 2020 WL 8921409, at *2 (6th Cir. Dec. 7, 2020) ("The prosecution did not have a constitutional duty to perform any particular tests on the light fixture . . . ." (citing *Youngblood*, 488 U.S. at 59));

*Roberts v. Edwards*, 74 F.3d 1240 (6th Cir. 1996) ("The district court properly concluded that the state had no constitutional duty to perform any particular forensic tests on the evidence collected." (citing *Youngblood*, 488 U.S. at 59)); *Fappiano v. City of New York*, 640 F. App'x 115, 120 (2nd Cir. 2016) ("Although *Brady* prohibits police officers from suppressing exculpatory evidence, 'the police do not have a constitutional duty to perform any particular tests' to generate exculpatory evidence." (quoting *Youngblood*, 488 U.S. at 59)); *Riggs v. Williams*, 87 F. App'x 103, 106 (8th Cir. 2004) ("To begin with, petitioner has offered no legal authority to support his claim that the police had a duty to test the shoes, and *Youngblood* supports the opposite conclusion." (citing *Youngblood*, 488 U.S. at 59)); *United States v. Hensley*, No. 22-cr-20290, 2023 WL 4238477, at *3 (E.D. Mich. June 28, 2023) ("Here, the Government did not suppress any evidence. By failing to preserve and test the gun, the Government did not fail to disclose evidence that it possessed.").

At bottom, because this is not a case where the prosecutor tested certain evidence but withheld the exculpatory results of the same, because the prosecutor had no duty to test the untested DNA samples, and because the untested DNA is not exculpatory, the Fifth District's conclusion on Petitioner's *Brady* claim was legally correct. More to the point, it was not contrary to, or an unreasonable application of, established Supreme Court precedent. Therefore, Petitioner's ineffective assistance of appellate counsel claim fails on the merits to the extent it is based on appellate counsel's failure to raise on direct appeal the

prosecutor's *Brady* violation. And because appellate counsel was not ineffective, the stand-alone *Brady* claim is procedurally defaulted.

### 4. Objection #3

Third, Petitioner contends that the R&R erred in recommending that the Court conclude that the prosecutor had no duty to test the untested DNA samples. Obj. 11, ECF No. 24. This objection fails for the reason addressed above.

### 5. Objection #4

Fourth, Petitioner asserts that the R&R incorrectly recommended that the Court not hold an evidentiary hearing in this case. Obj. 17, ECF No. 24.

The Magistrate Judge's recommendation was correct because the state court decided the pertinent issues on the merits, so this Court may consider only the state-court record for those issues. *E.g.*, *Simpson v. Hildebrand*, No. 24-4017, 2025 WL 3459580, at *2 (6th Cir. June 2, 2025) ("Simpson was not entitled to an evidentiary hearing to develop his claim with allegations and evidence not presented to the state courts." (citations omitted)).

In any event, there is no factual dispute that would warrant an evidentiary hearing.

### 6. Objection #5

Fifth, Petitioner argues that the R&R erred in recommending that the Court deny a Certificate of Appealability ("COA"). Obj. 18, ECF No. 24.

A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA. 28 U.S.C. § 2253(c)(1)(A). A court may issue a COA only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

To make such a showing when claims are denied on the merits, a petitioner must show "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim has been denied on procedural grounds, the petitioner must establish "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

On *de novo* review, the Court agrees that reasonable jurists would not find this Court's merits conclusions debatable or wrong and likewise would not find debatable whether this Court was correct in its procedural rulings.

## III.  CONCLUSION

For the above reasons, the Court **ADOPTS IN PART** the R&R. The Court concludes that Petitioner's (1) stand-alone Ground One claims, (2) ineffective assistance of trial counsel claim, and (3) stand-alone *Brady* claim are procedurally defaulted. The Court alternatively denies them on the merits. The Court denies on the merits Petitioner's claims that appellate counsel was

ineffective for failing to raise on direct appeal: (1) trial counsel's ineffectiveness, and (2) the *Brady* violation. The Court **DECLINES** to issue a COA, and the Court also **CERTIFIES** that any appeal would be objectively frivolous and that the Sixth Circuit should not permit Petitioner to proceed *in forma pauperis*.

The Clerk **SHALL** issue judgment for Respondent and close this case.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**